**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MARMAC, LLC,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-115** |
| **INTERMOOR, INC., ET AL.,**<br>    **Defendants** | **SECTION "E"** |

## ORDER AND REASONS

Before the Court is a Motion to Dismiss Plaintiff's Claims, or in the Alternative, Motion to Transfer filed by Defendant the Met Mast Tower, and its appurtenances, *in rem* (the "Met Mast").[1] Also before the Court is Defendant US Wind Inc.'s ("US Wind") Motion to Dismiss Plaintiff's Claims and Cross-Claimant's Claims, or in the Alternative, Motion to Transfer.[2] Plaintiff MARMAC, LLC, *d/b/a* McDonough Marine Services, ("MARMAC") filed a consolidated opposition to both motions.[3] Defendant/Cross-Claimant InterMoor, Inc. ("InterMoor") filed an opposition to US Wind's motion.[4] With leave of Court, the Met Mast and US Wind filed a joint supplemental memorandum in support of their motions.[5] MARMAC filed a supplemental opposition to both motions.[6] The Met Mast and US Wind filed a joint reply to MARMAC's supplemental opposition.[7] The Court heard oral argument on both motions on September 28, 2021.[8] The Court has considered the briefs, the record, and the applicable law, and now issues its ruling.

---

[1] R. Doc. 26.
[2] R. Doc. 27.
[3] R. Doc. 34.
[4] R. Doc. 35.
[5] R. Doc. 51.
[6] R. Doc. 54.
[7] R. Doc. 57.
[8] R. Doc. 60.

## BACKGROUND[9]

This case stems from the failed transportation of the Met Mast from Houma, Louisiana, to waters off the coast of Ocean City, Maryland, and the failed installation of the Met Mast at a wind farm there.[10] This endeavor has resulted in several lawsuits in different jurisdictions across the United States. In 2014, Defendant US Wind obtained leases to the Maryland Wind Energy Area off the coast of Ocean City, Maryland (the "wind farm").[11] US Wind commissioned the construction of a meteorological mast, the *in rem* Defendant Met Mast, in Houma, Louisiana, which US Wind planned to use at the wind farm to measure wind and other environmental conditions offshore.[12] US Wind hired Defendant/Cross-Claimant InterMoor to serve as the prime contractor for the transportation of the Met Mast from Louisiana to the wind farm and its subsequent installation.[13] InterMoor, in turn, entered into a time charter with Plaintiff MARMAC for use of the barge MARMAC 261 (the "Barge") to transport the Met Mast to the wind farm.[14] The charter between MARMAC and InterMoor consists of a Universal Blanket Time Charter Agreement, dated February 7, 2012, and a Time Charter Order for this specific voyage, dated July 31, 2019 (collectively, the "Barge Charter").

By early September 2019, the Barge carrying the Met Mast reached the staging site at the wind farm, but weather forced several delays of its installation.[15] Ultimately, on September 26, 2019, US Wind attempted to terminate its contract with InterMoor.[16] That same day, US Wind requested that InterMoor deposit the Met Mast at US Wind's facility

---

[9] The background facts are taken primarily from the allegations of the Plaintiff's Complaint. R. Doc. 1.
[10] *Id.* ¶¶ 10-12.
[11] *Id.* ¶ 10.
[12] *Id.* ¶¶ 8, 10-11.
[13] *Id.* ¶ 12.
[14] *Id.* ¶¶ 4, 12-14.
[15] *Id.* ¶ 20; R. Doc. 15 at 12.
[16] R. Doc. 1 ¶ 20.

in Baltimore, Maryland.[17] US Wind also contacted MARMAC seeking to charter the Barge to transport the Met Mast to the facility in Baltimore, but MARMAC responded that the Barge was chartered to InterMoor and that US Wind should contact InterMoor about the cargo.[18] After failed negotiations, InterMoor directed the Barge to return to Louisiana with the Met Mast still on board.[19]

While en route to Louisiana, the Barge docked in Morehead City, North Carolina, to avoid inclement weather.[20] On October 9, 2019, US Wind commenced a possessory action under Rule D of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules") in the United States District Court for the Eastern District of North Carolina.[21] On October 10, 2019, the North Carolina court arrested the Met Mast while it was still on board the Barge, effectively arresting the Barge.[22] InterMoor intervened in the action to attach the Met Mast under Supplemental Rule B as security for a breach of contract action against US Wind.[23] On January 29, 2020, the court approved a special bond by US Wind to secure the release of the Met Mast, and ordered US Wind and InterMoor to split the *custodia legis* costs for the 111 days the Met Mast was arrested and attached, including MARMAC's daily charter.[24] MARMAC alleges InterMoor paid its portion of MARMAC's charter for that period, but US Wind has only paid half of its portion.[25]

---

[17] R. Doc. 27-1 at 3; R. Doc. 27-13 at 1.
[18] R. Doc. 27-1 at 3-4; R. Doc. 27-21 at 1.
[19] R. Doc. 1 ¶ 21.
[20] *Id.*
[21] *Id.* ¶ 22; *see also US Wind Inc. v. US Wind Met Mast Tower*, No. 19-145 (E.D.N.C. Apr. 15, 2020).
[22] R. Doc. 1 ¶ 23.
[23] *Id.* ¶¶ 24, 26; *see also US Wind Inc. v. US Wind Met Mast Tower*, No. 19-145, 2019 WL 6770519 (E.D.N.C. Dec. 11, 2019).
[24] R. Doc. 1 ¶ 27; *see also US Wind Inc. v. US Wind Met Mast Tower*, No. 19-145, 2020 WL 476695 (E.D.N.C. Jan. 29, 2020).
[25] R. Doc. 1 ¶ 28.

In the meantime, on October 11, 2019, US Wind filed a separate breach of contract action against InterMoor in the United States District Court for the District of Maryland.[26] InterMoor filed a counterclaim against US Wind for breach of contract in that action.[27] Once the Met Mast was released from arrest and attachment in North Carolina, the Eastern District of North Carolina transferred its case, along with the special bond, to the District of Maryland.[28] The transferred case is stayed pending the resolution of the original Maryland breach of contract suit filed by US Wind.[29] InterMoor filed its own breach of contract suit against US Wind in the United States District Court for the Southern District of Texas on October 3, 2019.[30] On January 23, 2020, the Texas court dismissed InterMoor's claims without prejudice for lack of personal jurisdiction over US Wind.[31] MARMAC is not a party to any of these three suits.[32]

After the Met Mast was released from arrest and attachment in North Carolina, InterMoor attempted to terminate the Barge Charter with MARMAC and ceased charter payments; however, MARMAC alleges charter continued to be due until the Barge was

---

[26] *Id.* ¶ 25; *see also US Wind Inc. v. InterMoor, Inc.*, No. 19-2984 (D. Md. Sept. 20, 2021). On February 16, 2021, in its second amended complaint US Wind also added American Global Maritime, Inc., a surveyor which was involved in the Met Mast's failed installation, as a defendant in the Maryland action.

[27] R. Doc. 27 at 6.

[28] R. Doc. 1 ¶ 25; *see also US Wind Inc. v. US Wind Met Mast Tower*, No. 19-145 (E.D.N.C. Apr. 15, 2020). The court also declined to allow MARMAC to intervene.

[29] *US Wind Inc. v. US Wind Met Mast Tower*, No. 20-975 (D. Md. May 12, 2020).

[30] R. Doc. 27-1 at 1; *see also InterMoor Inc. v. US Wind, Inc.*, No. 19-3823 (S.D. Tex. Feb. 6, 2020).

[31] R. Doc. 27-1 at 1; *see also InterMoor Inc. v. US Wind, Inc.*, 435 F. Supp. 3d 754 (S.D. Tex. 2020).

[32] There have been several other actions related to the incident underlying this case. US Wind filed a complaint in the United States District Court for the District of Delaware seeking the arrest of a vessel used to carry equipment necessary for the installation of the Met Mast as well as against the vessel owner and InterMoor *in personam*. *U.S Wind, Inc. v. Great White*, No.19-1873 (D. Del. Oct. 16, 2019). US Wind voluntarily dismissed its complaint. *Id.* US Wind also filed a complaint seeking replevin, interim injunctive relief, and a temporary restraining order in the Delaware Court of Chancery. *US Wind, Inc. v. All Coast, LLC*, No. 2019-0796 (Del. Ch. Oct. 3, 2019). That case is now closed. *Id.* InterMoor filed a complaint to establish and enforce a state-law mechanic's lien against US Wind in the Circuit Court for Worchester County, Maryland. This complaint was denied for lack of jurisdiction, as the events at issue occurred in the Atlantic Ocean outside of the seaward boundaries of Maryland. *Intermoor, Inc. v. US Wind, Inc.*, No. C-23-CV-20-000097 (Md. Cir. Ct. Worchester Cnty. Sept. 16, 2020), *aff'd*, No. 0867, 2021 WL 4130752 (Md. Ct. Spec. App. Sept. 10, 2021). The Maryland Circuit Court's opinion is reproduced in this case's record at R. Doc. 26-8. MARMAC was not a party to any of these actions.

properly redelivered to MARMAC in Louisiana free of the Met Mast.[33] MARMAC alleges US Wind refused to remove the Met Mast in North Carolina or arrange for towage of the Barge so the Met Mast could be removed elsewhere.[34] Because of InterMoor's and US Wind's inaction, MARMAC alleges it hired a tug to return its Barge to Louisiana, still laden with the Met Mast.[35] Once the Barge returned to Louisiana, MARMAC paid to have the Met Mast unloaded and stored onshore.[36] MARMAC finally received the Barge free of the Met Mast on August 13, 2020.[37]

MARMAC filed this suit on January 20, 2021. MARMAC sues InterMoor *in personam* for breach of contract seeking unpaid charter from January 30, 2020, the day after InterMoor paid its portion of the North Carolina *custodia legis* and ceased payments, to August 13, 2020, the day MARMAC received the Barge free of the Met Mast.[38] MARMAC sues the Met Mast *in rem* to enforce its maritime lien for maritime trespass, alleging US Wind failed to retake possession of the Met Mast, depriving MARMAC of the Barge's services while the Met Mast was on board.[39] This Court arrested the Met Mast under Supplemental Rule C on January 21, 2021,[40] and US Wind filed a statement of interest on February 9, 2021, to defend and seek restitution of its property.[41] Finally, MARMAC sues US Wind *quasi in rem* for maritime trespass for failing to remove the Met Mast from the Barge and for unjust enrichment for forcing MARMAC to pay for the Met Mast's storage until it was removed.[42] MARMAC also seeks the unpaid *custodia*

---

[33] R. Doc. 1 ¶¶ 31-35.
[34] *Id.* ¶¶ 32, 36.
[35] *Id.* ¶¶ 36, 39. InterMoor reimbursed MARMAC for the third-party towage costs. *Id.* ¶ 39.
[36] *Id.* ¶¶ 40-41.
[37] *Id.* ¶¶ 34
[38] *Id.* ¶¶ 46-55.
[39] *Id.* ¶¶ 56-62, 74-76.
[40] R. Doc. 6.
[41] R. Doc. 11.
[42] *Id.* ¶¶ 56-73.

*legis* expenses the Eastern District of North Carolina charged to US Wind.[43] This Court attached the Met Mast under Supplemental Rule B on January 21, 2021,[44] and approved a special bond of $1,000,000, on June 21, 2021, releasing the Met Mast from arrest and attachment.[45] The Met Mast remains in storage, at MARMAC's expense.

InterMoor filed a crossclaim against US Wind for breach of contract.[46] InterMoor's crossclaim is identical to its counterclaim in the active Maryland case. The Met Mast has filed a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), improper venue under Rule 12(b)(3), and failure to state a claim under Rule 12(b)(6).[47] Alternatively, the Met Mast asks the Court to transfer this case to the District of Maryland.[48] US Wind has filed a motion to dismiss MARMAC's claims against it and InterMoor's crossclaim against it for lack of personal jurisdiction under Rule 12(b)(2) and improper venue under Rule 12(b)(3).[49] Alternatively, US Wind asks the Court to transfer this case to the District of Maryland.[50]

## **LEGAL STANDARD**

### I.    **Rule 12(b)(2) Motion to Dismiss for Lack of *In Rem* and *Quasi In Rem* Jurisdiction**

The Met Mast and US Wind object to the Court's exercise of *in rem* and *quasi in rem* jurisdiction over them, respectively.[51] The Met Mast argues the exercise of *in rem* jurisdiction is improper under the due process clause because it never availed itself of the benefits of this forum; rather, InterMoor and MARMAC took the Met mast to Louisiana

---

[43] *Id.* ¶¶ 73.
[44] R. Doc. 5.
[45] R. Doc. 48.
[46] R. Doc. 15.
[47] R. Doc. 26.
[48] *Id.*
[49] R. Doc. 27.
[50] *Id.*
[51] InterMoor admits it is subject to the jurisdiction of this Court. R. Doc. 15 ¶ 5.

against US Wind's instructions to deposit it in Baltimore. The Met Mast also argues the posting of the special bond in the Eastern District of North Carolina bars MARMAC's claims in this Court. Similarly, US Wind argues the exercise of *quasi in rem* jurisdiction is improper under the due process clause because it never availed itself of the benefits of this forum since the Met Mast was taken to Louisiana contrary to its instructions.

A person claiming an interest in property arrested or attached usually challenges the validity of the arrest or attachment though a motion to vacate under Supplemental Admiralty Rule E(4)(f).[52] Nevertheless, parties may assert similar attacks on arrest and attachment under Rule 12.[53] While there are differences between Rule 12 motions to dismiss and Supplemental Rule E(4)(f) motions to vacate, a Rule 12(b)(2) motion contesting the court's exercise of jurisdiction has "similar force" to a Rule E(4)(f) motion, and courts have generally analyzed the validity of arrest and attachment procedures the same way under either motion.[54] Under this standard, the plaintiff has the burden of showing why an arrest or attachment should not be vacated.[55]

In this case, MARMAC asserts *in rem* jurisdiction over the Met Mast through arrest under Supplemental Rule C and *quasi in rem* jurisdiction over US Wind through attachment under Supplemental Rule B. The Fifth Circuit has explained the different scopes of Supplemental Rules B and C:

> The Supplemental Rules appended to the Federal Rules of Civil Procedure allow a maritime plaintiff to secure his claim. Supplemental Rule B provides for attachment. Supplemental Rule C provides for arrest. Attachment and arrest are not the same, and they should not be confused. Supplemental

---

[52] Fed. R. Civ. Pro. Supp. R. for Admiralty or Mar. Claims & Asset Forfeiture Actions E(4)(f) ("Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules."); *see also Arctic Ocean Int'l, Ltd. v. High Seas Shipping Ltd.*, 622 F. Supp. 2d 46, 50, (S.D.N.Y. 2009).

[53] *See Arctic Ocean Int'l*, 622 F. Supp. 2d at 50.

[54] *See id.* at 50-52.

[55] *See id.*; *cf. World Fuel Servs. Sing. PTE, Ltd. v. M/V As Varesia*, 727 F. App'x 811, 814 (5th Cir. 2018).

Rule E provides procedural rules for both attachment and arrest, though, and attachment and arrest are similar in several ways.

Rule B is an adjunct to a claim in personam. When the defendant cannot "be found within the district," the plaintiff may "attach the defendant's goods and chattels." Thus, the plaintiff's claim is against the person, not the thing, but if the person cannot be found in the district, the plaintiff is protected by the ability to proceed against the thing. Such a proceeding is an action quasi in rem. In contrast, Supplemental Rule C is a true proceeding in rem. The claim is against the thing itself.[56]

## II.    Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

The Met Mast argues MARMAC has failed to allege a valid maritime lien against it sufficient to warrant arrest under Supplemental Rule C. The Met Mast argues MARMAC cannot sustain a carrier's lien against it. The general rule is that a vessel owner has a carrier's lien over cargo carried on its vessels for unpaid freight, but when the vessel is under charter this lien extends only to cargo owned by the charterer, not third parties like US Wind. The Met Mast argues the exception to the general rule applies in this case.

As explained, a person claiming an interest in property arrested or attached typically challenges the validity of the arrest or attachment though a motion to vacate under Supplemental Rule E(4)(f).[57] When a 12(b)(6) motion to dismiss is brought instead, the standards are different than those under a Supplemental Rule E(4)(f) motion to vacate.[58] While a Rule 12(b)(6) motion confines the court to the pleadings in considering the motion, a Supplemental Rule E(4)(f) motion permits the court to consider evidentiary submissions, hold a hearing if requested, and requires the plaintiff to meet a higher

---

[56] *Sembawang Shipyard, Ltd. v. Charger, Inc.*, 955 F.2d 983, 986-87 (5th Cir. 1992).

[57] Fed. R. Civ. Pro. Supp. R. for Admiralty or Mar. Claims & Asset Forfeiture Actions E(4)(f); *see also Arctic Ocean Int'l*, 622 F. Supp. 2d at 50.

[58] *See, e.g.*, *FIMBANK PLC v. Discover Inv. Corp.*, No. 2:19-CV-00264, 2020 WL 3519159, at *3-4 (S.D. Tex. May 21, 2020); *White Rosebay Shipping S.A. v. HNA Grp. Co.*, No. 2:12–CV–00096, 2013 WL 441014, at *3 (S.D. Tex. Feb. 5, 2013); *Vitol, S.A. v. Capri Marine, Ltd.*, No. MJG–09–3430, 2011 WL 5577618, at *2 (D. Md. Aug. 22, 2011); *Arctic Ocean Int'l*, 622 F. Supp. 2d at 50; *Tide Line, Inc. v. Eastrade Commodities, Inc.*, No. 06 CV 1979, 2006 WL 4459297, at *7 (S.D.N.Y. Aug. 15, 2006).

standard to maintain its arrest or attachment.[59] However, because the Met Mast has filed a Rule 12(b)(6) motion to dismiss, the Court follows Rule 12(b)(6) standards.

Pursuant to Rule 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[60] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[61] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[62] The court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[63] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[64]

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[65] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

---

[59] *FIMBANK PLC*, 2020 WL 3519159, at *4.

[60] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

[61] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

[62] *Id.*

[63] *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).

[64] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).

[65] *Twombly*, 550 U.S. at 555.

show[n]'—that the pleader is entitled to relief."[66] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[67]

## III.  Rule 12(b)(3) Motion to Dismiss for Improper Venue

The Met Mast and US Wind argue the Eastern District of Louisiana is an improper venue for this case. They argue US Wind is not a resident of Louisiana, and a substantial part of the events that gave rise to this action did not occur in Louisiana. Additionally, the Met Mast and US Wind argue venue cannot be based on the Met Mast's location in this District because it is only here as a result of MARMAC and InterMoor ignoring US Wind's instructions to deposit the Met Mast in Baltimore.

To determine whether venue is improper under Rule 12(b)(3), the Court may consider, "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[68] Venue is ordinarily governed by the general venue provisions of 28 U.S.C. § 1391, "except as otherwise provided by law."[69] The general venue provisions of § 1391 state:

> A civil action may be brought in--
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.[70]

---

[66] *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).
[67] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (quotations omitted).
[68] *Dunn v. JPMorgan Chase Bank, N.A.*, No. 20-483, 2020 WL 1984328, at *1 (E.D. La. Apr. 27, 2020) (quoting *Ballew v. Continental Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012)).
[69] 28 U.S.C. § 1391(a).
[70] *Id.* § 1391(b).

## LAW AND ANALYSIS

I.   *In Rem* **Claims Against the Met Mast**

   A.   **The Court Has *In Rem* Jurisdiction Over the Met Mast through Supplemental Rule C Arrest.**

MARMAC asserts *in rem* jurisdiction over the Met Mast through Supplemental Rule C arrest.[71] The Met Mast argues the exercise of *in rem* jurisdiction over it is improper because the Met Mast was taken to Louisiana contrary to US Wind's instructions to deposit the Met Mast in Baltimore, and the unilateral activity of third parties in bringing the Met Mast to Louisiana, without any purposeful availment of the benefits of the forum by the Met Mast, is insufficient to establish *in rem* jurisdiction.[72] The Met Mast also argues the bond posted in the Eastern District of North Carolina and subsequently transferred to the District of Maryland stands as security for all claims against the Met Mast arising out of the same set of facts.[73]

MARMAC responds that purposeful availment of the benefits of the forum is not required in an arrest action under Supplemental Rule C, and, further, US Wind actually consented to the transportation of the Met Mast to Louisiana in the litigation in the Eastern District of North Carolina.[74] MARMAC also argues the bond posted in North Carolina was a special bond that provides security only for claims by InterMoor, and the special bond does not bar MARMAC's claims in this Court since MARMAC is otherwise unsecured.[75]

---

[71] *See* R. Doc. 1 at 1.
[72] R. Doc. 26-1 at 10-12.
[73] *Id.* at 12.
[74] R. Doc. 34 at 3-6.
[75] *Id.* at 6-7. MARMAC also argues that the Met Mast and US Wind have waived any objections to the exercise of jurisdiction over them when US Wind filed an unrestricted statement of interest in this case. *Id.* at 7-8; *see Cactus Pipe & Supply Co. v. M/V MONTMARTRE*, 756 F.2d 1103, 1107-11 (5th Cir. 1985); *Sembawang Shipyard, Ltd. v. Charger, Inc.*, 955 F.2d 983, 989-90 (5th Cir. 1992). Because the Court has

### 1.   Minimum Contacts Are Not Required for Exercise of *In Rem* Jurisdiction Pursuant to Arrest Under Supplemental Rule C.

In support of its argument that the Court does not have *in rem* jurisdiction over it, the Met Mast argues it has not availed itself of the benefits of this forum. The Met Mast cites only cases outside the admiralty context.[76] In particular, the Met Mast notes that the United States Supreme Court held in *Shaffer v. Heitner* that state-court assertions of *in rem* and *quasi in rem* jurisdiction must comport with the requirement of minimum contacts under *International Shoe* and its progeny.[77] However, courts have repeatedly held that "*Shaffer* . . . results in no change in the admiralty context."[78] In the admiralty *in rem* context, the Fifth Circuit has explained that the purposeful contacts of the defendant maritime property and its owner with the forum are irrelevant because the defendant is the property itself and its presence in the district confers jurisdiction:

> [J]urisdiction is asserted over [maritime property] under the same circumstances that jurisdiction could be asserted over an individual. . . . [Accordingly,] foreign [maritime property] may be sued even though it would not satisfy the "minimum contacts" tests developed out of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The theory of the [maritime property]'s own liability is sufficient to confer *in rem* jurisdiction without regard to the contacts its owner may have with the district. It is clear that the due process questions in admiralty are significantly different than in attachment proceedings commenced in state courts.[79]

Accordingly, whether US Wind instructed MARMAC and InterMoor to deposit the

---

found objections by the Met Mast and US Wind to be without merit, the Court need not address the issue of waiver.

[76] *See, e.g.*, *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011); *Shaffer v. Heitner*, 433 U.S. 186 (1977); *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429 (5th Cir. 2014); *McFadin v. Gerber*, 587 F.3d 753 (5th Cir. 2009).

[77] 433 U.S. 186, 209 (1977).

[78] *Merchs. Nat'l Bank of Mobile v. Dredge Gen. G. L. Gillespie*, 663 F.2d 1338, 1350 n.18 (5th Cir. 1981); *see also Trans-Asiatic Oil Ltd. S.A. v. Apex Coil Co.*, 743 F.2d 956, 963 (1st Cir. 1984); *Day v. Temple Drilling Co.*, 613 F. Supp. 194, 197 (S.D. Miss. 1985); *A/S/ HJALMAR BJORGES REDERI v. Tug Boat Condor*, No. 79-131-E., 1979 WL 6504688 (S.D. Cal. Mar. 28, 1979). *See generally* Angela M. Bohmann, *Applicability of Shafer to Admiralty in Rem Jurisdiction*, 53 Tul. L. Rev. 135 (1978).

[79] *Id.*

Met Mast in Baltimore and whether the Met Mast availed itself of the benefits of this forum are irrelevant; proper arrest under Supplemental Rule C is all that is required to exercise *in rem* jurisdiction over the Met Mast. "A prerequisite of *in rem* jurisdiction is that the property (the *res*) to be arrested must be present in the district when the suit is filed or during the pendency of the action."[80] In this case, the Met Mast was present in this District, and the Court issued a warrant of arrest for the Met Mast following the procedures of Supplemental Rule C.[81] As the procedures outlined in Supplemental Rule C have been followed, the Court properly has *in rem* jurisdiction over the Met Mast.

### 2. The Special Bond in the Eastern District of North Carolina Does Not Bar MARMAC's Claims in This Court.

The Met Mast's argument regarding the special bond posted in the Eastern District of North Carolina also is without merit. The North Carolina special bond states in relevant part:

> NOW, THEREFORE, the value of the Stipulation or Bond for release of the MET Mast Tower on account of any claim or judgment for alleged damage to INTERMOOR in connection with a suit you have or may file, has been fixed by stipulation of the parties at the sum of $3,500,000, until and unless a Court shall determine otherwise, and the undersigned be shall be held firmly bound to INTERMOOR in the amount of $3,500,000 as security for the performance of this obligation, and that the undersigned further consenting that, if INTERMOOR recovers against the MET Mast Tower, an Order may be entered against the undersigned for an amount not exceeding $3,500,000, which, upon execution, may issue against the undersigned's goods, chattels, lands, and other property and against the above security.[82]

The Eastern District of North Carolina approved the *special* bond under Supplemental

---

[80] 2 Thomas J. Schoenbaum, Admiralty and Maritime Law § 21:4 (6th ed.), Westlaw (database updated Nov. 2020); *see also Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel*, 569 F.2d 330, 333 (5th Cir. 1978) ("In rem actions in admiralty generally require, as a prerequisite to a court's jurisdiction, the presence of the vessel or other res within the territorial confines of the court."); *Smith v. W. Offshore, Inc.*, 590 F. Supp. 670, 674 (E.D. La. 1984) ("A proceeding *in rem* is against the vessel itself, and can only be commenced in the judicial district in which the vessel is, or is soon expected to be, found.").
[81] R. Doc. 6.
[82] R. Doc. 26-27 at 7.

Rule E(5)(a).[83] "Unlike a 'general bond,' which requires court approval and is 'conditioned to answer the judgment of [the] court in all or any actions that may be brought,' a special bond is claim-specific; that is, it does not provide security for other claims against the [maritime property]."[84] By its own terms, the special bond applies only to "any claim or judgment for alleged damages to *INTERMOOR*." A special bond cannot provide security for "a separate claim, asserted by a separate party, for separate damages," even when that claim "turns on the same facts and involves the same issues" as the one covered by the special bond.[85] Because the special bond posted in the Eastern District of North Carolina did not provide security to MARMAC, its existence cannot bar MARMAC from arresting the Met Mast in Louisiana. For these reasons, the Court finds it has *in rem* jurisdiction over the Met Mast.

### B. Because MARMAC Has No Maritime Lien Against the Met Mast, MARMAC Has Not Stated a Cause of Action Against the Met Mast.

Supplemental Rule C provides an action *in rem* may be brought to enforce a maritime lien.[86] While, "[i]t is true that there can be no decree in rem against the vessel except for the enforcement of a lien given by the maritime law, or by a state law," the Supreme Court has explained, "if the existence of such a lien were a question of jurisdiction, then nearly every question arising upon the merits could be made one of jurisdiction."[87] "[T]he question of lien or no lien is not one of jurisdiction, but of merits."[88] The Met Mast argues, even if the Court has *in rem* jurisdiction over it, MARMAC's claim

---

[83] *US Wind Inc.*, 2020 WL 476695, at *1.
[84] *El Paso Prod. GOM, Inc. v. Smith*, 406 F. Supp. 2d 671, 674-75 (E.D. La. 2005) (alteration in original) (footnote omitted) (citation omitted) (quoting Fed. R. Civ. Pro. Supp. R. for Admiralty or Mar. Claims & Asset Forfeiture Actions E(5)(b)).
[85] *See Overstreet v. Water Vessel Norkong*, 706 F.2d 641, 643 (5th Cir. 1983).
[86] Fed. R. Civ. Pro. Supp. R. for Admiralty or Mar. Claims & Asset Forfeiture Actions C(1)(a).
[87] *The Resolute*, 168 U.S. 437, 440 (1897); *see also Logistics Mgmt., Inc. v. One (1) Pyramid Tent Arena*, 86 F.3d 908, 912 (9th Cir. 1996).
[88] *The Resolute*, 168 U.S. at 440.

should be dismissed because MARMAC has failed to allege a valid  maritime lien for maritime trespass against the Met Mast.

"A maritime lien gives to its holder a property right in [maritime property], and the proceeding *in rem* is simply a means of enforcing the property right."[89] As "the maritime lienor has an interest in the [maritime property], and the arrest of the [maritime property] is to enforce that interest, the maritime lien," a valid lien generally is required to maintain an *in rem* action against maritime property under Supplemental Rule C.[90] Maritime liens can arise in several ways, including by operation of the general maritime law, for example, as the result of a tort; by special statute; or by contract.[91] "The Federal Courts have a great responsibility to speak consistently in maritime controversies because of their recognized national and international significance. They must take care not to fashion rules and exceptions for particular circumstances without assessing their impact in other situations."[92] Accordingly, courts must construe maritime liens strictly and be cautious in expanding the body of recognized liens.[93]

### 1.   The General Maritime Law Does Not Provide MARMAC an Automatic Tort Lien Against the Met Mast.

MARMAC alleges it holds a "maritime tort lien" over the Met Mast for maritime trespass for the Met Mast's continued presence on the Barge, despite MARMAC's

---

[89] *Merchs. Nat'l Bank*, 663 F.2d at 1346.

[90] *Id.*; *see also Belcher Co. of Ala., Inc. v. M/V Maratha Mariner*, 724 F.2d 1161, 1163 (5th Cir. 1984) ("[A] maritime lien on the vessel is a prerequisite to an action *in rem*."); Fed. R. Civ. Pro. Supp. R. for Admiralty or Mar. Claims & Asset Forfeiture Actions C ("An action in rem may be brought: (a) to enforce a maritime lien . . . .").

[91] *See, e.g.*, *Merchs. Nat'l Bank*, 663 F.2d at 1346; *Lykes Lines Ltd. v. M/V BBC Sealand*, 398 F.3d 319, 323 (5th Cir. 2005). *See generally* 1 Schoenbaum, *supra* note 80, § 9:1

[92] *Merchs. Nat'l Bank*, 663 F.2d at 1347.

[93] *See, e.g.*, *Osaka Shosen Kaisha v. Pac. Exp. Lumber Co.*, 260 U.S. 490 (1923) ("The maritime privilege or lien, though adhering to the vessel, is a secret one which may operate to the prejudice of general creditors and purchasers without notice and is therefore stricti juris and cannot be extended by construction, analogy or inference."); 1 Schoenbaum, *supra* note 80, § 9:1 ("In fact, courts will not readily expand the body of recognized liens, most of which are well established by long practice.").

demands for US Wind to remove it, depriving MARMAC of the possession and use of the Barge.[94]

A maritime lien generally "arises by operation of law from a tort."[95] The Fifth Circuit recognizes the tort of maritime trespass.[96] However, the cases recognizing a maritime lien arising from tort "rely primarily on the legal fiction that a *vessel*, personified, is itself the defendant in a proceeding in rem to enforce a lien."[97] In *Barnett Marine, Inc. v. Cargo of Crane Equipment & Machinery*, this Court held no maritime lien arose for the alleged trespass of crane components on a barge after the charterer failed to make charter payments.[98] The Court reasoned maritime tort liens "rely primarily on the legal fiction that a vessel, personified, is itself the defendant . . . [h]owever, there is no authority which supports the extension of the personification of the vessel rationale to include other inanimate objects such as cargo."[99] That rationale applies to this case as well. The *res*, the Met Mast, is not a personified vessel but an inanimate object to which courts—and maritime history—have not extended this fiction of personification.[100] Accordingly, a maritime tort lien does not arise by operation of law from the Met Mast's alleged trespass on the Barge.

---

[94] R. Doc. 1 ¶¶ 56-62, 75.

[95] *Merchs. Nat'l Bank*, 663 F.2d at 1346.

[96] [96] *Marastro Compania Naviera, S.A. v. Candian Mar. Carriers, Ltd.*, 959 F.2d 49, 53 (5th Cir. 1992).

[97] *Barnett Marine, Inc. v. Cargo of Crane Equip. & Mach.*, No. 96-2494, 1998 WL 336701, at *4 (E.D. La. June 19, 1998) (emphasis added).

[98] *Id.* at *1, 4.

[99] *Id.* at *4; *see also Seema Shipping, LLC v. One or More Accounts of Lans Logistics, LLC*, No. 3:15-cv-1095-J-39MCR, 2015 WL 13793318, at *5 & n.9 (M.D. Fla. Oct. 29, 2015) (citations omitted) ("It is likewise doubtful under the facts presented whether Plaintiffs can adequately allege admiralty jurisdiction and a maritime lien against the freight by presenting one of their other alleged tort claims as a maritime tort. . . . It is also questionable whether admiralty jurisdiction can exist to support an *in rem* arrest of money in this matter. The cases cited by Plaintiffs for support of the arrest of freight involve contracts providing a plaintiff with an express lien on either cargo or freight for unpaid freight. . . . Assuming, however, that Plaintiffs have alleged an arrest of *unpaid* freight, Plaintiffs have not alleged they were a party to a contract providing for an express lien on such freight.").

[100] *Cf. Merchs. Nat'l Bank*, 663 F.2d at 1345 (emphasis added) ("The maritime lien has at its basis, to a substantial extent, the historical and theoretical concept of personification: a *vessel* is liable, as such, for torts and contracts even though the owner may or may not be.").

> **2. The General Maritime Law Does Not Provide MARMAC a Carrier's Lien over the Third-Party Cargo—the Met Mast—and MARMAC has not Extended Its Carrier's Lien by Contract.**

MARMAC also alleges it has a "maritime carrier's lien" over the Met Mast for the unpaid freight due for transporting and storing the Met Mast on the Barge.[101] The Met Mast argues that, when the vessel is chartered, a lien by the vessel owner extends only to cargo owned by the charterer.[102] While a contractual provision between the vessel and the charterer plus actual notice to a third-party cargo owner may extend the lien to a third party's cargo, the Met Mast argues, there is no such provision in the Barge Charter.[103] Moreover, the Met Mast argues it could not have trespassed on the Barge because it was present pursuant to the Barge Charter between MARMAC and InterMoor.[104] Finally, the Met Mast argues it should not be liable for transportation back to Louisiana when US Wind directed InterMoor and MARMAC to deposit the Met Mast in Baltimore.[105]

In response, MARMAC argues the requirement for a contractual provision extending the carrier lien to third-party cargo and actual notice of such provision is not required because the Met Mast was not on board the Barge pursuant to a charter; rather, the Met Mast was aboard because US Wind refused to remove it from the Barge in North Carolina.[106] MARMAC argues these facts support a prima facie case of maritime trespass.[107] MARMAC requests the Court grant it leave to amend its complaint if the Court dismisses its *in rem* claim against the Met Mast.[108]

---

[101] R. Doc. 1 ¶ 76.
[102] R. Doc. 26-1 at 13-14.
[103] *Id.*
[104] *Id.* at 14.
[105] *Id.*
[106] R. Doc. 34 at 12-14.
[107] *Id.* at 14.
[108] *Id.*

"[M]aritime law recognizes a lien arising as a matter of law in favor of the vessel owner against the cargo for charges including unpaid freight."[109] As an exception to this general rule, however, "when cargo is shipped *under a charter*, this lien only extends to cargo that is owned by the charterer."[110] MARMAC asserts it holds a lien over the Met Mast—cargo owed not by the charterer InterMoor but by a third party US Wind—for the cost of transporting the Met Mast from North Carolina to Louisiana. MARMAC argues this transportation was not pursuant to the Barge Charter between MARMAC and InterMoor because US Wind refused to unload the Met Mast in North Carolina.

In *GIC Services, L.L.C. v. Freightplus USA, Inc.*, the Fifth Circuit elaborated on what it means for cargo to be "shipped under a charter" such that the exception to the carrier's lien applies:

> A "charter" is a maritime term for the contract arising between the shipowner and the party leasing the ship to transport cargo. But not all contracts for maritime transportation are charters. A charter "is a specialized form of contract for the hire *of an entire ship*." These are contracts securing "private carriage," as distinct from carriage by a "common carrier" who "is available to carry cargo for all who agree to pay its charges."[111]

The Fifth Circuit held the cargo in that case, which was shipped under an agreement that "did not 'hire [the] entire ship' or otherwise secure private carriage," was not a charter, and the exception to the carrier's lien did not apply.[112]

In this case, the exception to the carrier's lien applies. US Wind contracted with InterMoor to transport the Met Mast from Louisiana to the wind farm. InterMoor, in turn, entered into the Barge Charter with MARMAC. The Barge Charter is labelled a "Time

---

[109] *Lykes Lines*, 398 F.3d at 323.
[110] *Id.* (emphasis added).
[111] 866 F.3d 649, 669-70 (5th Cir. 2017).
[112] *Id.* at 670 (alteration in original).

Charter" and contemplates the use of the entire Barge.[113] The Met Mast was originally loaded onto the Barge pursuant to the Barge Charter. In addition, MARMAC alleges the Barge Charter was still in full effect at the time of the return voyage, accruing charter hire until the Barge was properly redelivered to MARMAC free of the Met Mast on August 13, 2020. The Barge Charter itself does not require the Met Mast and other cargo to be unloaded before the Barge's return to Louisiana—whether at the wind farm, North Carolina, or elsewhere—the Barge Charter simply requires the Barge to eventually be redelivered without cargo aboard in the same condition as at the start of the charter, normal wear and tear excepted. Accordingly, even though US Wind refused to unload the Met Mast in North Carolina, the Court finds the Met Mast was onboard the Barge pursuant to a charter, namely the Barge Charter.

A vessel owner and charterer may extend the vessel owner's carrier's lien to cargo owned by third parties by contract; however, "[t]o be enforceable against a third party cargo owner . . . who is not a party to the charter party agreement, the vessel owner's lien must be perfected" by "giv[ing] actual notice of the lien provision in the charter party to the cargo owner before the cargo owner pays its freight to the bill of lading issuer."[114] MARMAC does not allege there is a provision in the Barge Charter extending its carrier's lien to third-party cargo, and MARMAC does not allege it gave US Wind actual notice of any such provision. Accordingly, the Court finds the exception to the carrier's lien applies, and MARMAC does not have a carrier's lien over the Met Mast.

---

[113] R. Docs. 1-4, 1-5; *see also* 2 Schoenbaum, *supra* note 80, § 11:5 ("The time charter party is a contract of affreightment to use a ship in order to ship goods for a specific period of time. The carrier makes the ship's capacity available to the time charterer for this purpose. The charterer bears the expenses connected with each voyage and pays hire to the carrier based upon the time the ship is under charter.").
[114] *Lykes Lines*, 398 F.3d at 323.

Because MARMAC has not alleged a valid maritime lien against the Met Mast, MARMAC has failed to state a cause of action against the Met Mast *in rem*, and MARMAC's claim must be dismissed.[115] MARMAC requests the Court grant it leave to amend its complaint if the Court dismisses any of its claims.[116] Federal Rule of Civil Procedure 15(a) provides the Court should grant leave to amend freely when justice so requires.[117] Leave to amend is not "automatic," but the Court must possess a "substantial reason" to deny leave to amend.[118] A court possesses a "substantial reason" when, for instance, a plaintiff has acted with "undue delay, bad faith or dilatory motive" in seeking leave to amend, the plaintiff has made "repeated failures to cure deficiencies by amendments previously allowed," "undue prejudice [will result] to the opposing party by virtue of allowance of the amendment," or the amendment would be completely futile.[119] The Court finds any amendment in this case would be futile. There is no dispute that US Wind owns the Met Mast.[120] The only argument MARMAC could make in an amended complaint for the existence of a carrier's lien over the Met Mast is that the Barge Charter extended MARMAC's carrier's lien to third-party cargo. MARMAC attached the Barge Charter as an exhibit to its Complaint.[121] There is no provision in the Barge Charter that extends MARMAC's carrier's lien to cargo owned by third parties. MARMAC cannot allege a maritime lien against the Met Mast under the undisputed facts of this case. Accordingly, the Court denies MARMAC's request for leave to amend.

---

[115] In finding no maritime lien against the Met Mast, the Court in no way passes judgment on MARMAC's claims against US Wind *quasi in rem*.

[116] R. Doc. 34 at 14.

[117] Fed. R. Civ. P. 15(a).

[118] *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir.2005)

[119] *Id.*

[120] *See* R. Doc. 1 ¶ 2 (referring to the Met Mat as US Wind's property).

[121] R. Doc. 1-4; R. Doc. 1-5.

## II.     Supplemental Rule B *Quasi In Rem* Jurisdiction Over US Wind

### A.     General and Specific Jurisdiction Are Not at Issue in This Case.

First, US Wind argues this Court has no general jurisdiction over it because it is incorporated in Massachusetts, has its principal place of business in Maryland, and does no business in Louisiana.[122] Second, US Wind argues there is no specific jurisdiction over it because it lacks minimum contacts with Louisiana, as US Wind is incorporated in Massachusetts, has its principal place of business in Maryland, did not have a direct contractual relationship with a Louisiana business, and its contract with InterMoor did not require the return of the Met Mast to Louisiana.[123] US Wind further argues the cause of action does not arise out of US Wind's contacts with Louisiana because US Wind's contract was with InterMoor, which is not a Louisiana corporation, and the Met Mast was taken to Louisiana contrary to US Wind's instructions to deposit it in Baltimore.[124] Moreover, US Wind argues the exercise of specific jurisdiction over US Wind would be unfair and unreasonable because of its lack of contacts with Louisiana and because a related action is already pending in Maryland.[125] In response, MARMAC and InterMoor each explain MARMAC asserts jurisdiction over US Wind not through general or specific jurisdiction, but *quasi in rem* jurisdiction through Supplemental Rule B attachment.[126]

US Wind's arguments concerning general and specific jurisdiction are irrelevant as MARMAC only alleges *quasi in rem* jurisdiction over US Wind through Supplemental Rule B attachment.

---

[122] R. Doc. 27-1 at 11-13.
[123] *Id.* at 14-15.
[124] *Id.* at 15.
[125] *Id.* at 15-17.
[126] R. Doc. 34 at 2; *see* R. Doc. 33 at 5.

**B.      Minimum Contacts Are Not Required for Exercise of *Quasi In Rem* Jurisdiction Pursuant to Attachment Under Supplemental Rule B.**

US Wind asserts objections to the exercise of *quasi in rem* jurisdiction over it similar to the ones asserted by the Met Mast discussed in Section I above. US Wind argues there is no *quasi in rem* jurisdiction over it because US Wind has not availed itself of the privilege of conducting activities in Louisiana, and the Met Mast was taken to Louisiana by the unilateral action of InterMoor and MARMAC contrary to US Wind's instructions to deposit it in Baltimore.[127]

In response, MARMAC and InterMoor each argue *quasi in rem* jurisdiction through Supplemental Rule B attachment does not require minimum contacts, and they argue the requirements for attachment have been satisfied, which is all that is required.[128] Moreover, they argue, even if minimum contacts were required, US Wind actually consented to the transportation of the Met Mast to Louisiana in the litigation in the Eastern District of North Carolina.[129]

In support of its argument that the Court lacks *quasi in rem* jurisdiction over US Wind, US Wind cites the same cases as those in the Met Mast's motion to dismiss for lack of *in rem* jurisdiction, including *Shaffer*. As explained above, "*Shaffer* . . . results in no change in the admiralty context."[130] If the requirements for Supplemental Rule B attachment are met, "minimum contacts and the traditional notions do not matter. That is because any attached property serves as the basis for personal jurisdiction over [the] Defendant."[131] Accordingly, US Wind's instructions to deposit the Met Mast in Baltimore

---

[127] R. Doc. 27-1 at 18-20.
[128] R. Doc. 34 at 3-7; R. Doc. 33 at 5-12.
[129] R. Doc. 34 at 5-6; R. Doc. 33 at 10-11.
[130] *See Merchs. Nat'l Bank*, 663 F.2d at 1350 n.18.
[131] *Agrocooperative Ltd. v. Sonangol Shipping Angl. (Luanda) Limitada*, No. H-14-1707, 2015 WL 138114, at *6 (S.D. Tex. Jan. 8, 2015); *see also Great Prize, S.A. v. Mariner Shipping Party, Ltd.*, 967 F.2d 157, 159

and whether US Wind availed itself of the benefits of the forum are irrelevant.

**C.    The Only Requirement for the Exercise of *Quasi In Rem* Jurisdiction, Proper Attachment Under Supplemental Rule B, Is Met.**

Attachment under Supplemental Rule B is proper when "(1) the plaintiff has a valid prima facie admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment."[132]

**1.    The First Requirement for Attachment is Satisfied Because MARMAC Has Alleged a Prima Facie Admiralty Claim.**

MARMAC asserts a claim against US Wind for maritime trespass. The Fifth Circuit recognizes the tort of maritime trespass and has held "that general common law and in particular the Restatement (Second) of Torts should control to determine the law of maritime trespass."[133] According to the Restatement,

> One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally
> > (a) enters land in the possession of the other, or causes a thing or a third person to do so, or
> > (b) remains on the land, or
> > (c) fails to remove from the land a thing which he is under a duty to

---

[132] (5th Cir. 1992) ("[A] good-faith allegation in the complaint that the *res* is present within the geographical jurisdiction of the court is *the* jurisdictional fact which gives the court *in personam* jurisdiction over the defendant purported to own the *res*."); *Argo Dredging, L.L.C. v. 1990 IMS Model Dredge*, No. 1:07CV536 LG-JMR, 2007 WL 2461972, at *1 (S.D. Miss. Aug. 27, 2007); *Day v. Temple Drilling Co.*, 613 F. Supp. 194, 197 (S.D. Miss. 1985); *VTT Vulcan Petroleum, S.A. v. Langham-Hill Petroleum, Inc.*, 684 F. Supp. 389, 390 n.2 (S.D.N.Y. 1989); *Filia Compani Naviera, S.A. v. Petroship, S.A.*, 1982 A.M.C. 1217 (S.D.N.Y. 1982); *Grand Bahama Petroleum Co. v. Canadian Transp. Agencies, Ltd.*, 450 F. Supp. 447, 451-56 (W.D. Wash. 1978); *Trans-Asiatic Oil*, 743 F.2d at 958-63; *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation ("C.N.A.C.")*, 605 F.2d 648, 655 & n.7 (2d Cir. 1979). *See generally* 2 Schoenbaum, *supra* note 80, § 21:7.

[132] *Space Shippinhg Ltd. v. ST Shipping & Transp. Pte Ltd.*, No. 17-10570, 2017 WL 4737277, at *1 (E.D. La. Oct. 19, 2017); *see also* Fed. R. Civ. Pro. Supp. R. for Admiralty or Mar. Claims & Asset Forfeiture Actions B.

[133] *Marastro Compania Naviera*, 959 F.2d at 53.

remove. [134]

Courts have held abandoned materials left on a plaintiff's property constitute a prima facie claim of maritime trespass.[135] In this case, MARMAC alleges US Wind trespassed on its Barge by abandoning the Met Mast there and refusing to remove it, despite MARMAC's requests. MARMAC alleges this trespass deprived it of the commercial use of the Barge and caused damages. Accordingly, MARMAC has alleged a prima facie case of trespass.

MARMAC also asserts a claim against US Wind for unjust enrichment. The Fifth Circuit recognizes admiralty claims for unjust enrichment.[136] "The requisites of the enrichment action are . . . (i) enrichment, (ii) impoverishment, (iii) a connection between the enrichment and impoverishment, (iv) absence of justification or cause, [and] (v) [the] 'subsidiary character of the remedy.'"[137] The "subsidiary character of the remedy" means that the remedy is not available if the law provides another remedy for the impoverishment or declares a contrary rule.[138] MARMAC alleges that US Wind was enriched by forcing MARMAC to transport and store the Met Mast aboard the Barge and later, after it was unloaded, at a facility in Louisiana, at MARMAC's expense. While MARMAC was forced to store the Met Mast on the Barge, MARMAC alleges it was deprived of the use of the Barge, and MARMAC continues to pay for storage costs at the storage facility. MARMAC alleges US Wind was not justified in receiving these benefits,

---

[134] Restatement (Second) of Torts § 158 (Am. L. Inst. 1965); *see also Marastro Compania Naviera*, 959 F.2d at 53

[135] *See, e.g.*, *Lakes of Gum Cove Hunting & Fishing, L.L.C. v. Weeks Marine, Inc.*, 182 F.Supp.2d 537 (W.D. La. 2001) (considering a claim for maritime trespass from the dumping and abandoning of dredged soil on neighboring marshland); *In re N.Y. Trap Rock Corp.*, 172 F. Supp. 638 (S.D.N.Y. 1959) (considering a claim for maritime trespass for leaving a barge tied to a dock without consent).

[136] *See, e.g.*, *Kane v. Motor Vessel Leda*, 491 F.2d 899, 900 (5th Cir. 1974).

[137] *Kane v. Motor Vessel Leda*, 355 F. Supp. 796, 803 (E.D. La. 1972) (quoting Nicholas, *Unjustified Enrichment in the Civil Law and Louisiana Law*, 36 Tul. L. Rev. 605, 610 (1962)), *aff'd*, 491 F.2d 899 (5th Cir. 1974).

[138] *Cf.* La. Civ. Code art. 2298 (2021). Courts in this circuit have looked to Louisiana law when addressing admiralty claims for unjust enrichment, and this Court finds it useful as well. *See, e.g.*, *Kane*, 355 F. Supp. at 801-05.

and because MARMAC is not in privity of contract with US Wind, there is no other remedy at law for MARMAC to recover from US Wind. While it is questionable whether MARMAC has no other remedy against US Wind, especially since MARMAC also asserts a claim for maritime trespass, US Wind has not moved to dismiss MARMAC's claim for unjust enrichment on the merits. Further, the Court has found MARMAC has stated a prima facie claim of trespass. As a result, the Court need not determine whether MARMAC has also stated a prima facie case for maritime unjust enrichment.

### 2. The Second, Third, and Fourth Requirements for Attachment Are Satisfied.

"[T]he requirement of Rule B that the defendant not, 'be found within the district' . . . mean[s] that the defendant is neither subject to the jurisdiction of the district court nor amenable to service of process within the district."[139] US Wind is a Massachusetts corporation with its principal place of business in Maryland, and its only connection with Louisiana is the presence of the Met Mast. US Wind admits it does not maintain a registered agent in Louisiana.[140] As a result, US Wind is not found within this District. On the other hand, US Wind does not contest its property, the Met Mast, can be found within the District. Finally, US Wind points to no—and the Court has found no—statutory or maritime law bar to this attachment.

For these reasons, the four requirements for attachment under Supplemental Rule B are met, the Met Mast was properly attached, and the Court has *quasi in rem* jurisdiction over US Wind.

---

[139] *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 421 (5th Cir. 2001).
[140] R. Doc. 27-1 at 13.

### III.   Venue and Motion to Transfer[141]

#### A.   The Eastern District of Louisiana is a Proper Venue for MARMAC's Claims Against US Wind and InterMoor's Crossclaim Against US Wind.

US Wind argues the Eastern District of Louisiana is an improper venue for this action under § 1391.[142] It argues US Wind is not a resident of Louisiana, and a substantial part of the events that gave rise to this action did not occur in Louisiana because claims based on the same events are pending in Maryland.[143] Finally, US Wind argues venue cannot be properly based on the Met Mast's location in this District because MARMAC and InterMoor ignored US Wind's instructions to deposit the Met Mast in Baltimore when they brought it to Louisiana.[144] MARMAC and InterMoor argue the general venue provisions of § 1391 are inapplicable in attachment actions under Supplemental Rule B because venue is proper where the attached property is located.[145]

The general venue provisions of § 1391 are inapplicable in this case as venue in admiralty attachment proceedings is "otherwise provided by law."[146] As to MARMAC's *quasi in rem* claim against US Wind, in "courts of admiralty, a libel *in personam* may be maintained for any cause within their jurisdiction, wherever a monition can be served upon the libellee, or an attachment made of any personal property or credits of his."[147]

---

[141] Because the Court has already dismissed the claims against the Met Mast *in rem*, it need not address whether venue is proper in this District for the claims against it or whether the claims against it should be transferred to the District of Maryland.

[142] R. Doc. 27-1 at 20-21.

[143] *Id.*

[144] *Id.* at 21.

[145] R. Doc. 33 at 12-13; *see* R Doc. 34 at 11-12.

[146] *See* 28 U.S.C. § 1391(a).

[147] *In re Louisville Underwriters*, 134 U.S. 488, 490 (1890); *see also Brown v. C.D. Mallor & Co.*, 122 F.2d 98, 103 (3d Cir. 1941) "As to venue in a particular district court, . . . if the respondent was not found within the reach of the court but had property within the jurisdiction, a proceeding in personam in admiralty could be begun against him by a writ of foreign attachment. In other words, venue in admiralty was not dependent upon the presence of the respondent in person or upon the maintenance of a principal office within a particular district but could be invoked by reason of the presence of property of the respondent within the district."); *Baliff v. Storm Drilling Co.*, 356 F. Supp. 309, 310 (E.D. Tex. 1972); *Sioux City & New Orleans*

Thus, because US Wind's property, the Met Mast, was properly attached in this District, as explained above, venue is proper in this District. As to InterMoor's crossclaim against US Wind, "once a crossclaim has been asserted under Rule 13(g) and is brought within the supplemental jurisdiction of the court, objections based on a lack of venue cannot be raised."[148] The venue statute is designed to test the appropriateness of the forum at the institution of a suit by the original plaintiff, and since the crossclaim is not bringing an original action, it does not have to satisfy the statutory venue prerequisites.[149] Accordingly, venue is proper in this District as to both MARMAC's claims against US Wind and InterMoor's crossclaim against US Wind.

### B. The Motion to Transfer to the District of Maryland Is Denied as to MARMAC's Claims and Granted as to InterMoor's Crossclaim.

US Wind argues the Court should transfer MARMAC's claims and InterMoor's crossclaim against it to the District of Maryland, where two other actions between US Wind and InterMoor are pending.[150] US Wind argues these actions were filed first and have substantial overlap with the facts and issues of this case, in particular InterMoor's crossclaim, which is identical to its counterclaim in the original District of Maryland action.[151] Furthermore, US Wind argues the Supreme Court has sanctioned the transfer of admiralty *in rem* and *quasi in rem* actions to courts considering *in personam* claims against the vessel owner, even though the *in rem* and *quasi in rem* actions could not have

---

*Barge Lines, Inc. v. Upper Miss. Towing Corp.*, 221 F. Supp. 737, 739 (E.D. Tex. 1963); *Cowles v. Kinzler*, 225 F. Supp. 63, 65 (W.D. Pa. 1963).

[148] 6 Charles Alan Wright, et al., Federal Practice and Procedure § 1433 (3d ed.), Westlaw (database updated Apr. 2021); *see also Scott v. Fancher*, 369 F.2d 842, 844 (5th Cir. 1966) ("By definition cross-claims must be closely related to the existing action. Thus they are always treated as within the ancillary jurisdiction of the court, and independent jurisdictional grounds are not required nor can there be any venue objection."); *Mark E. Mitchell, Inc. v. Charleston Libr. Soc'y*, 114 F. Supp. 2d 259, 262 (S.D.N.Y. 2000).

[149] Wright, et al., *supra* note 148, § 1433.

[150] R. Doc. 27-1 at 21-22; R. Doc. 57.

[151] R. Doc. 27-1 at 21-22; R. Doc. 57 at 4-7.

been originally brought in the transferee court.[152] Finally, US Wind argues the posting of the special bond in this Court removes any need for this action to remain here tied to the physical location of the Met Mast, as the bond may be freely transferred.[153]

MARMAC and InterMoor argue that MARMAC is not a party to the litigation pending in the District of Maryland, and the attachment could only be brought in this District.[154] MARMAC further argues the question in this case, who owes MARMAC money for its unpaid charter hire, is distinct from the question presented in the District of Maryland, who breached the contract between US Wind and InterMoor to transport and install the Met Mast.[155] Additionally, MARMAC argues this Court is a more convenient forum than the District of Maryland because MARMAC and InterMoor have easier access to this Court, the witnesses are here, Louisiana has an interest in enforcing the Barge Charter, and a significant portion of the events giving rise to this action occurred here.[156]

### 1.  Transfer of MARMAC's Claims Against US Wind Is Denied.

"The 'first to file' rule is grounded in principles of comity and sound judicial administration."[157] "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."[158] "To avoid these ills," the rule states, "a district court may dismiss [or transfer] an action where the issues presented can be

---

[152] R. Doc. 57 at 3-4.
[153] R. Doc. 57 at 7-8. US Wind also argues Local Rules 3.1 and 3.1.1 also require transfer, R. Doc. 27-1 at 10; however, this argument is without merit. These rules concern transfers within sections of this Court, not transfers to other districts.
[154] R. Doc. 34 at 8-11; R. Doc. 33 at 14; R. Doc. 54 at 2-5.
[155] R. Doc. 54 at 2-5.
[156] R. Doc. 34 at 8-11. MARMAC also originally argued in its first opposition that transfer should not occur unless a bond is posted, *id.* at 11-12; however, since that time, as MARMAC recognizes in its supplemental opposition, a special bond has been posted in this Court securing MARMAC's claims, R. Doc. 54.
[157] *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997).
[158] *Id.* (quoting *W. Gulf Mar. Ass'n v. ILA Deep Sea Local*, 121 F.3d 947, 950 (5th Cir. 1985)).

resolved in an earlier-filed action pending in another district court."[159] "The rule does not . . . require that cases be identical. The crucial inquiry is one of 'substantial overlap.'"[160] "Complete identity of parties is not required for dismissal or transfer of a case filed subsequently to a substantially related action."[161]

However, "while a district court *may* dismiss an injunction suit if duplicative litigation is pending in another jurisdiction, it is not *required* to do so. . . . [S]uch dismissal [or transfer] is committed to the district court's discretion."[162] Factors that may warrant declining to transfer a subsequently filed case are whether the action could not have been brought in the transferee court and whether the transfer is inconvenient for the parties and witnesses under 28 U.S.C. § 1404(a).[163]

In this case the Court finds transfer of MARMAC's claims inappropriate. While there is a common underlying fact pattern, the claims in this case are distinct from the claims raised in the District of Maryland cases. This case concerns who owes MARMAC for the unpaid costs of transporting the Met Mast from North Carolina to Louisiana and its subsequent storage onshore. On the other hand, the action filed by US Wind in the District of Maryland concerns the alleged breach of the contract between US Wind and InterMoor for the Met Mast's transportation and installation and InterMoor's refusal to deliver the Met Mast to Baltimore. In US Wind's second amended complaint in the District of Maryland, MARMAC is mentioned in only 4 out of 201 paragraphs, and then only to allege that MARMAC owned the Barge and that MARMAC told US Wind it would

---

[159] *Harris Cnty. v. CarMax Auto Superstores, Inc.*, 177 F.3d 306, 319 (5th Cir. 1999) (quoting *W. Gulf Mar. Ass'n*, 121 F.3d at 729).

[160] *Save Power*, 121 F.3d at 950 (quoting *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971)).

[161] *Id.* at 951.

[162] *Harris Cnty.*, 177 F.3d at 319 (first citing *W. Gulf Mar. Ass'n*, 121 F.3d 721; and then citing *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 155 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, (1977)).

[163] *Id.* at 319-20.

have to negotiate with InterMoor, the Barge's charterer, to have the Barge return the Met Mast to Baltimore.[164] In InterMoor's counterclaim in the original District of Maryland case, MARMAC is mentioned in only 3 out of 41 paragraphs containing similar allegations to those in US Wind's second amended complaint as well as a claim of tortious interference with the Barge Charter against US Wind.[165] In US Wind's possessory action original filed in the Eastern District of North Carolina and later transferred to the District of Maryland, MARMAC is mentioned in 3 of 18 paragraphs and then only in the allegation that MARMAC owns the Barge on which the Met Mast was located. In InterMoor's complaint in intervention filed in that action, MARMAC is not mentioned at all.[166] MARMAC is not a party to either of the two actions pending in the District of Maryland, and, while complete identity of parties is not required to transfer under the "first to file" rule, MARMAC's absence reinforces the Court's determination that the actions are not substantially related.

Considerations under § 1404(a) also weigh against transferring MARMAC's claims. § 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." MARMAC's attachment action could not have been brought in the District of Maryland because, by US Wind's admission, US Wind can be "found within th[at] district." US Wind argues the Supreme Court case *Continental Grain Co. v. The FBL-585*[167] allows the transfer of this attachment action to the District of Maryland even

---

[164] R. Doc. 27-26 ¶¶ 53, 168-69, 172.
[165] R. Doc. 27-9 ¶¶ 15, 17, 34.
[166] *See* R. Doc. 27-28.
[167] 364 U.S. 19 (1960).

though the claim could not have originally been brought there. In that case, the Supreme Court held the district court should have transferred an arrest and attachment action filed in New Orleans by a cargo owner against both the vessel *in rem* and the vessel owner *in personam* to the district in Tennessee where the same parties were already litigating the same claims against each other *in personam*.[168] The Court noted the similarities between the cases, including the fact that the parties were identical:

> Although the action in New Orleans was technically brought against the barge itself as well as its owner, the obvious fact is that, whatever other advantages may result, this is an alternative way of bringing the owner into court. . . . The crucial issues about fault and damages suffered were identical, whether considered as a claim against the ship or its owner. The witnesses were identical. Thus, while two methods were invoked to bring the owner into court and enforce any judgment against it, the substance of what had to be done to adjudicate the rights of the parties was not different at all.[169]

*Continental Grain* is distinguishable from this case. The parties in this case and the District of Maryland cases are not identical, and, as explained, different issues are being litigated, which will in turn necessitate different witnesses.

Moreover, this district is a more convenient venue to litigate MARMAC's claims. In determining which district is more convenient, the Court considers "a number of private and public interest factors, none of which are given dispositive weight."[170] The private factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.[171] The public factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized

---

[168] *Id.* at 22-27.
[169] *Id.* at 26.
[170] *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).
[171] *Id.*

interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.[172]

The private factors weigh in favor of keeping MARMAC's claims in this Court. The Barge and the Met Mast are in Louisiana. MARMAC is a Louisiana company headquartered in Louisiana, and InterMoor is headquartered in Texas. Most of the witnesses for MARMAC and InterMoor are located in Louisiana or Texas, and both MARMAC and InterMoor indicated at oral argument that litigating these claims in Louisiana will be more convenient for them. As for the public factors, the local interest weighs in favor of litigating MARMAC's claims here as Louisiana has an interest in seeing a Louisiana company paid for its work on a contract signed in Louisiana. The remaining public factors are neutral as neither court is seemingly over-congested, the law governing this case is the general maritime law, and there does not seem to be a conflicts of law question. For these reasons, the Court will not transfer MARMAC's claims to the District of Maryland.

### 2. InterMoor's Crossclaim Against US Wind Is Severed and Transferred to the District of Maryland.

While the Court does not find transfer appropriate for MARMAC's claims, the Court finds InterMoor's crossclaim is substantially similar to the litigation in the District of Maryland as both actions concern who breached the contract between US Wind and InterMoor for the transportation and installation of the Met Mast. In fact, InterMoor's crossclaim in this Court is nearly—if not completely—identical to the counterclaim InterMoor raised against US Wind in the original District of Maryland litigation.[173]

---

[172] *Id.*
[173] *Compare* R. Doc. 15 *with* R. Doc. 27-9.

Moreover, the considerations of § 1404(a) weigh in favor of transferring InterMoor's crossclaim. It is undisputed that US Wind is subject to the jurisdiction of the court in the District of Maryland, and InterMoor could have—and in fact did—bring its breach of contract and related claims in the District of Maryland against US Wind. While this Court may be more convenient for InterMoor and its witnesses with respect to its crossclaim, InterMoor's convenience in this Court must be balanced against US Wind's convenience in litigating in Maryland. The parties have already begun discovery and motion practice on their claims in Maryland. Moreover, Louisiana does not have a strong interest in enforcing the contract between US Wind and InterMoor as neither is a Louisiana corporation, and the performance of the contract occurred largely off the coast of Maryland.

"A district court has wide discretion to sever a claim against a party into separate cases."[174] When the severance inquiry "is combined with a . . . motion to transfer," as in this case, the Court should consider the "relative merits of convenience versus judicial economy."[175]

> [T]he court must weigh carefully whether the inconvenience of splitting the suit outweighs the advantages to be gained from the partial transfer. It should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issue to be litigated in two cases.[176]

For the reasons stated above, the merits of judicial economy outweigh any inconvenience resulting from severing the crossclaim. InterMoor's exact claims are already being litigated in the District of Maryland, and the issues presented in InterMoor's crossclaim,

---

[174] *In re Rolls Royce Corp.*, 775 F.3d 671, 680 (5th Cir. 2014).
[175] *Id.* This is a different analysis than when the severed case would remain in the same district. *Id.* at 680 & n. 40.
[176] *Id.* (quoting *Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir. 1984), *overruled on other grounds by In re Air Crash Disaster Near New Orleans, La. On July 9, 1982*, 821 F.2d 1147 (5th Cir. 1987)).

the breach of the contract between US Wind and InterMoor, are distinct from the issues presented in this case, the alleged breach of the Barge Charter by InterMoor and the alleged trespass and unjust enrichment by US Wind. Accordingly, severance and transfer of InterMoor's crossclaim against US Wind is appropriate.

<u>**CONCLUSION**</u>

**IT IS ORDERED** that the motion by Defendant the Met Mast Tower, and its appurtenances, *in rem* to dismiss, or in the alternative, motion to transfer[177] is **GRANTED**, insofar as the Met Mast seeks dismissal based on Plaintiff MARMAC, LLC's failure to state a proper maritime lien against the Met Mast. Accordingly, MARMAC's claims against the Met Mast *in rem* are **DISMISSED WITH PREJUDICE**.[178]

**IT IS FURTHER ORDERED** that the Defendant US Wind Inc.'s motion to dismiss or, in the alternative, motion to transfer[179] is **GRANTED IN PART**, insofar as it seeks to transfer Defendant/Cross-Claimant InterMoor, Inc.'s crossclaim to the United States District Court for the District of Maryland. In all other respects US Wind's motion is **DENIED**. InterMoor's crossclaim against US Wind[180] is **SEVERED** and **TRANSFERRED** to the United States District Court for the District of Maryland.

**IT IS FURTHER ORDERED** that Plaintiff MARMAC, LLC's request for leave to amend its complaint is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant/Cross-Claimant InterMoor, Inc.'s request for jurisdictional discovery as to US Wind is **DENIED AS MOOT** as the Court has found US Wind subject to this Court's *quasi in rem* jurisdiction.

---

[177] R. Doc. 26.
[178] This Order does not affect the Court's approval of the special bond as security for all claims asserted by MARMAC against US Wind. R. Doc. 48.
[179] R. Doc. 27.
[180] R. Doc. 15.

In summary, the remaining claims pending in this Court are Plaintiff MARMAC, LLC's claim for breach of contract against Defendant InterMoor, Inc. *in personam* and Plaintiff MARMAC, LLC's claims for maritime trespass and maritime unjust enrichment against Defendant US Wind Inc. *quasi in rem*.

**New Orleans, Louisiana, this 14th day of October, 2021.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**